Pando MAZEVSKI and Vera Mazevski, natural parents and guardians of George Mazevski, an infant, Plaintiffs,

v.

HORSEHEADS CENTRAL SCHOOL DISTRICT, Arthur Carichner, and John M. Kent, Individually and in their capacity as employees of the Horseheads Central School District, Defendants.

No. 95–CV–6491L.

United States District Court,
W.D. New York.

Jan. 2, 1997.

Raymond J. Urbanski, Elmira, NY, for plaintiffs.

James F. Young, Stephen M. Proudfoot, Sayles, Evans, Brayton, Palmer & Tifft, Elmira, NY, for defendants.

## DECISION AND ORDER

LARIMER, Chief Judge.

This is a civil rights action brought pursuant to 42 U.S.C. § 1983. George Mazevski ("George") and his parents, Vera Mazevski

("Vera") and Pando Mazevski ("Pando"), (collectively "plaintiffs"), commenced this civil rights action against the Horseheads Central School District, the principal of Horseheads High School, John Kent ("Kent"), and the director of the Horseheads High School Marching Band ("Marching Band"), Arthur Carichner ("Carichner"), (collectively "defendants"), alleging that their respective constitutional rights where violated when George was dismissed from the Marching Band.

Pending before me is defendants' motion for summary judgment.

## FACTUAL BACKGROUND

During the 1994–95 academic year, George was a junior at Horseheads High School and a member of the Marching Band. In October 1994, George was invited to participate in a Macedonian music festival—an event that apparently had special meaning to George because of his heritage, ethnic background, and culture. Participation required George to be in Toronto on October 16 and October 22. After reviewing his Marching Band schedule, George realized, however, that there was an exhibition performance in Corning, New York on October 15 and a competition performance in Williamsport, Pennsylvania on October 22.

George discussed the music festival with Carichner and the possibility of being excused from these performances. According to George, Carichner told him that he would be allowed to miss one of the two performances, but not both. Carichner maintains, however, that he gave George permission to miss the October 15 exhibition, but not the October 22 competition.

George attended the October 15 exhibition performance with the Marching Band, but missed the October 22 competition performance. He participated fully in the Macedonian music festival.

When George returned to school on the Monday following the festival, his guidance counselor informed him that he was no longer in the Marching Band because he had missed a performance without permission. Additionally, as a result of being dropped from the Marching Band, George was no longer in good standing in the Music Department and, therefore, was ineligible to participate in the All State Band.

Vera and Pando met with George's guidance counselor, principal Kent, and Carichner. Kent informed George's parents that he would review the circumstances surrounding George's dismissal and would. talk to all music department teachers before a final determination was made. Upon further consideration, each music department teacher voted in favor of George's removal from the Marching Band. Kent agreed with this decision and informed Pando of it by telephone.

In this action, plaintiffs claim that defendants violated George's constitutional right to procedural due process.[1]

Defendants move for summary judgment, arguing that participation in a high school marching band does not constitute a constitutionally protected property interest, entitling George to procedural due process.

---

1. Plaintiffs' pleadings and motion papers are by no means a model of constitutional clarity. In fact, the Court is unable to discern which constitutional claims, if any, plaintiffs' counsel is attempting to pursue in addition to a violation of procedural due process. There is some language in plaintiffs' Memorandum of Law which suggests to the Court that they may be attempting to advance either a substantive due process claim or an equal protection claim, or both. See Plaintiffs' Memorandum of Law at 12 ("[T]here can be a violation of due process if the denial of participation is based on an abuse of a *fundamental right* or predicated on a *suspect basis*.") (emphasis added). However, these claims are never developed.

Nevertheless, this Court finds that even if such claims were properly presented, they would still be unsuccessful, There is simply no fundamental right to education. *San Antonio Ind. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). Further, plaintiffs have not gone beyond the conclusory allegations in the pleadings and designated specific facts which demonstrate that George's dismissal from the Marching Band was predicated on a suspect classification—*e.g.,* that other students, who missed performances for non-school related activities, were not dismissed from the Marching Band and that George was dismissed solely on the basis of his Macedonian ethnicity.

Because the procedural due process claim is the only claim that has been raised and argued before this Court, the Court will direct its attention to that claim on this motion.

Plaintiffs oppose the motion for summary judgment, claiming that participation in the Marching Band was a constitutionally protected right because it was a curricular activity for which George received academic credit and in which he was required to invest $75.00 to participate. Therefore, according to plaintiffs, participation in the band fell within George's unquestionable property right to a public education, entitling him to full procedural due process protections.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir.1994). A genuine issue of material fact exists only if the record, taken as a whole, could lead a reasonable trier of fact to find in favor of the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The burden of demonstrating the absence of any genuine issue of material fact rests on the moving party, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986), and all ambiguities and inferences that may be reasonably drawn from the facts must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir.1991).

To defeat summary judgment, the non-moving party must go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

### B. Plaintiffs' § 1983 Claim

In order to prevail on a claim for relief under 42 U.S.C. § 1983, plaintiffs must allege: (1) that the defendants acted under color of state law; and (2) that their conduct deprived plaintiffs of a right protected by the Constitution or laws of the United States. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930, 102 S.Ct. 2744, 2750, 73 L.Ed.2d 482 (1982); *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981).

A student's § 1983 claim against school officials can survive only if his underlying constitutional rights are abridged. *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). As the Supreme Court has opined:

[Section] 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations. The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members and § 1983 was not intended to be a vehicle for federal-court correction of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees.

*Id.* at 326, 95 S.Ct. at 1003.

Therefore, the dispositive issue in this case is whether, as a matter of law, George was denied a specific constitutional guarantee.

#### 1. Procedural Due Process

The Fourteenth Amendment to the United States Constitution prohibits state action which deprives "any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1.

Before one is entitled to due process, however, a property interest must be established. *Dangler v. Yorktown Cent. Sch.*, 771 F.Supp. 625, 627 (S.D.N.Y.1991). Therefore, the threshold issue is whether George's participation in the Marching Band rises to the level of a property interest.

It is well settled that property interests are not created by the Constitution, but arise from independent sources, such as state law. *Board of Regents v. Roth*, 408 U.S. 564, 577,

92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). In order to have "a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.*

Under New York State law, George undeniably had a legitimate claim of entitlement to a public education. New York law provides a free education to any person over age five and under age twenty-one. N.Y.Educ.Law § 3202(1). Further, compulsory attendance in school is required of all students between the ages of six and sixteen. N.Y.Educ.Law § 3205(1).

In *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), the Supreme Court held that a state must "recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause." *Id.* at 574, 95 S.Ct. at 736. However, in *Goss,* the Supreme Court spoke in terms of the total "educational process." *Id.* at 576, 579, 95 S.Ct. at 737, 738. Therefore, under *Goss,* the property interest which is protected by the Due Process Clause is the right to participate in the entire educational process and not the right to participate in each individual component of that process. Accordingly, it is only when a student is excluded from the entire educational process that due process must be afforded. His exclusion from a particular course, event or activity is of no constitutional import.

Furthermore, plaintiffs have cited no case which stands for the proposition that a student has a protected property interest in participating in a particular class or extracurricular activity. Many courts have rejected arguments similar to those advanced by plaintiffs here. For example, in *Seamons v. Snow,* 84 F.3d 1226 (10th Cir.1996), plaintiff commenced a § 1983 action, alleging, *inter alia,* that he had a constitutionally protected property interest in specific advanced placement courses and interscholastic activities.

*Id.* at 1234. The court acknowledged that under state law, the plaintiff had a constitutionally protected interest in receiving a public education. *Id.* However, with respect to the specific components of that education which plaintiff claimed he was denied, the court did not believe that plaintiff had "a constitutional right to those particular incidents of education." *Id.* at 1234–35. The court "interpreted *Goss* to speak only in general terms regarding the 'educational process'" and not its separate components. *Id.* Accordingly, plaintiff failed to allege a protectible property interest under the Due Process Clause, subject to constitutional protection. *Id.*

Similarly, in *Dallam v. Cumberland Valley Sch. Dist.,* 391 F.Supp. 358 (M.D.Pa.1975), plaintiff commenced a § 1983 action, alleging that he had been denied due process when he was precluded from participating in interscholastic athletics. *Id.* at 359. The court recognized that "*Goss* makes clear that the educational process is a property right created by the state." *Id.* at 361. However, the court also acknowledged that "[it] is significant that in the context of finding a property interest in education the majority in *Goss* spoke in terms of a 'total exclusion from the educational process.'" *Id.* (quoting *Goss,* 419 U.S. at 576, 95 S.Ct. at 737). According to the *Dallam* Court:

> [T]he property interest in education created by the state is participation in the entire process. The myriad activities which combine to form that educational process cannot be dissected to created hundreds of separate property rights, each cognizable under the Constitution. Otherwise, *removal from a particular class,* dismissal from an athletic team, a club or any extracurricular activity, would each require ultimate satisfaction of procedural due process.

*Id.* (emphasis added).

Therefore, because the property interest that exists is in the entire educational process, there is no constitutional right to any one specific curricular or extracurricular activity, meriting due process protections. *See Pegram v. Nelson,* 469 F.Supp. 1134, 1140 (M.D.N.C.1979) ("Since there is not a proper-

ty interest in each separate component of the 'educational process,' denial of the opportunity to participate in merely one or several ... activities would not give rise to a right to due process."). If the rule were otherwise, every disgruntled student (or, more likely, disgruntled parent) who believed she should not have been dropped from the pep squad, or who believed he should not have been benched for missing a team meeting, or who challenged his failure to be selected to take advance placement courses, could commence an action in federal court to challenge the decision of the school's administrators. This should not be. Discomfiture over such school-yard decisions does not warrant relief in federal court. To hold otherwise, is contrary to sound legal reasoning, invites disruption of the educational process and has scant pedological value.

In the instant case, George had a protectible property interest in the entire educational process. He did not, however, have a protectible property interest in participation in the Marching Band—whether it is viewed as a curricular or extracurricular activity. Consequently, no constitutional violation can be established.[2]

In the absence of a constitutional violation, this § 1983 action must be dismissed.

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted, and plaintiffs' complaint is dismissed.

IT IS SO ORDERED.

---

2. Even if George had a protectible property interest in participation in the Marching Band, entitling him to due process, the requisite due process, as set forth in *Goss,* was provided under the circumstances. George was informed of the reasons for his dismissal. Further, his parents were afforded an opportunity to present their side of the story before a final determination was made.